July 1, 2013

Peggy Mercherson
15517 Ingleside Avenue
Dolton, Illinois 60419

United States Bankruptcy Court
Northern District of Illinois
Eastern Division
219 South Dearborn
7th Floor
Chicago, Illinois 60604



Peggy A. Mercherson
Case No. 08 B 30223
Chapter 13
Judge A. Benjamin Goldgar
Re: Notice of Final Cure Payment

Dear Judge Goldgar,

I received the Notice of Final Cure Payment for $337.72 for Springleaf Financial Services. This bill has been paid. Attached please find a copy of the agreement made that has been marked **PAID as of March 4, 2013 from Springleaf Financial Services** also attached is a copy of the brochure stating "Your account is now paid in full" with the business card of Maria H. Harnish, Sr. Customer Account Specialist.

All of my obligations have been paid from the Case No. 08 B 30223. Please send me the final papers stating the bankruptcy has been completed.

Thank you.

Peggy Mercherson
708-288-2804

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:

Peggy A Mercherson

DEBTOR

CASE NO. 08 B 30223
CHAPTER 13

JUDGE A. BENJAMIN GOLDGAR

**NOTICE OF FINAL CURE PAYMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f), the Chapter 13 Trustee, Marilyn O Marshall files this Notice of Final Cure Payment. The amount required to cure the default in the claim listed below has been paid in full.

**Name of Creditor:** Springleaf Financial Services

**Final Cure Amount**

| Court Claim # | Account Number | Claim Asserted | Claim Allowed | Amount Paid |
|---|---|---|---|---|
| 0 | XXXX0188 | $325.00 | $325.00 | $337.72 |
| Total Amount Paid by Trustee | | | | $337.72 |

**Monthly Ongoing Mortgage Payment**

Mortgage is Paid:

___ Through the Chapter 13 Conduit          **X** Direct by the Debtor

Within 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a Statement as a supplement to the holder's proof of claim on the Debtor, Debtor's Counsel and the Chapter 13 Trustee, pursuant to Fed.R.Bank.P.3002.1(g), indicating 1) whether it agrees that the Debtor has paid in full the amount required to cure the default on the claim; and 2) whether the Debtor is otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).

The statement shall itemize the required cure or post-petition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f). Failure to notify may result in sanctions.

CASE NO. 08 B 30223

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Final Cure Payment was served on the parties listed below by ordinary U.S. Mail or served electronically through the Court's ECF System at the e-mail address registered with the Court on this 27th day of June, 2013.

Peggy A Mercherson, 15517 Ingleside, Dolton, IL  60419

ELECTRONIC SERVICE - Robert E Skipper, P O Box 978, Matteson, IL  60443

ELECTRONIC SERVICE - United States Trustee

Date:  June 27, 2013

/s/ Marilyn O Marshall
Marilyn O Marshall
Chapter 13 Trustee
224 S Michigan Ave
Ste 800
Chicago, IL  60604

**SECURITY AGREEMENT and FEDERAL DISCLOSURE STATEMENT**

ed: 3/19/08

ers: PEGGY MERCHERSON (called "You")

ne Address: 15517 Ingleside      Mailing Address: SAME

: Dolton      State: IL      Zip Code: 60419

tractor (or assignee, called "Creditor")

 : All Seasons Comfort      License No.: 109

ress: 17560 Chicago Ave, Lansing, IL 60438      Phone: 1-708-418-7091

espersons's Name: Robert Pavlinac

**QUIRED INSURANCE.** You agree to maintain insurance against all hazards and risks of physical damage on the collateral securing this loan (other than household goods). You ee to maintain such insurance for the term of the loan. You may obtain the required insurance from any agent or insurer of your choice, or you may name us as loss payee any existing policy you own. Unless you provide us with evidence of the required insurance coverage, we may purchase insurance at your expense to protect our interest in r collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in nection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total standing balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

tractor's Insurance Coverage: (1) Bodily Injury: $ N/A per person $ N/A per occurrence. (2) Property Damage: $ N/A occurrence. (3) Improper Work: $ N/A per occurrence. Insurance Company: _____ Policy No. _____

scription of Work to be Performed and Goods to be Provided
E WORK ORDER FOR DETAILS AND TERMINATION RIGHTS BEFORE WORK IS COMPLETED.)

Central Air

Cash Price (including taxes) 4690.00

e work expected to start: 3/20/08      Date work expected to be completed: 3/24/08

rk cannot start until the three-day right of rescission period expires (unless emergency waiver signed). Payment dates below are estimated and begin after work is completed. Buyer Contractor agree to sign a Completion Certificate when work is completed according to Contractor's agreement.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ NONE |
|---|---|---|---|---|
| 18.00 % | $1922.48 | $4690.00 | $6612.48 | $6612.48 |

our payment schedule will be:
 first payment of $ 137.76 beginning on 30 Days After Completion and 47 payments of $ 137.76 on the same day each month thereafter. Payments begin one month fter work is completed.

ecurity: You give Seller a security interest in:

☒ the goods or property being purchased.
☐ your real estate located at _____

PAID
MAR 04 2013
Springleaf Financial Services

ate Charge: If any payment is more than 10 days late, you will pay 5% of the entire payment, but not less than $10.
repayment: If you pay off early, you may be entitled to a refund of part of the finance charge.
ee the contract terms of this document for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment efunds.      "e" means an estimate.

**SEE BACK FOR INSURANCE CANCELLATION PROVISION**

Insurance: Credit life and credit disability insurance are not required to obtain credit, and will not be provided unless you agree to pay the additional cost. You understand that we anticipate profits from the sale of credit insurance and if you select such insurance you consent thereto. The cost for this insurance for the term of the contract is:

| | Premium | Signature |
|---|---|---|
| ngle Decreasing edit life | $ | I (Buyer) want single decreasing credit life insurance. _____ Buyer #1 |
| int Decreasing edit Life | $ | We (Buyers) want joint decreasing credit life insurance. _____ Buyer #1 _____ Buyer #2 |
| ngle Decreasing edit Life d Disability | $ | I (Buyer) want single decreasing credit life and disability insurance. _____ Buyer #1 |
| int Decreasing edit Life d Single sability | $ | We (Buyers) want joint decreasing credit life and single disability insurance on Buyer #1. _____ Buyer #1 _____ Buyer #2 |

**ITEMIZATION OF AMOUNT FINANCED**

1. CASH PRICE (including any sales tax)    $ 4690.00
2. DOWN PAYMENT
   A. CASH DOWN PAYMENT    $ NONE
   B. TRADE-IN _____    $ NONE
      (describe)
   C. TOTAL DOWN PAYMENT    $ NONE
3. UNPAID BALANCE OF CASH PRICE
   (1 minus 2)    $ 4690.00
4. AMOUNTS PAID TO OTHERS ON YOUR BEHALF
   A TO INSURANCE COMPANIES
      1. For Credit Life Insurance    $ _____
      2. For Disability Insurance    $ _____
      3. Other    $ _____
   B. TO PUBLIC OFFICIALS    $ _____
   C. TAXES    $ _____
   D. 1 TO _____
      For Title Ins./Abstract    $ _____
      2. TO _____
      For Title Opinion    $ _____
      3. Other    $ _____
   TOTAL PAID TO OTHERS ON YOUR BEHALF    $ NONE
5. Amount Financed (3 plus 4)    $ 4690.00

*Creditor may retain a portion of these amounts.

Date work expected to start: 3/20/08   Date work expected to be completed: 3/24/08
Work cannot start until the three-day right of rescission period expires (unless emergency waiver signed). Payment dates below are estimated and begin after work is completed. Buyer and Contractor agree to sign a Completion Certificate when work is completed according to Contractor's agreement.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ NONE |
|---|---|---|---|---|
| 18.00 % | $1922.48 | $4690.00 | $6612.48 | $6612.48 |

Your payment schedule will be:
A first payment of $137.76 beginning on 30 DAYS AFTER COMPLETION and 47 payments of $137.76 on the same day each month thereafter. Payments begin one month after work is completed.

Security: You give Seller a security interest in:
☒ the goods or property being purchased.
☐ your real estate located at _____

PAID
MAR 04 2013
Springleaf Financial Services

Late Charge: If any payment is more than 10 days late, you will pay 5% of the entire payment, but not less than $10.
Prepayment: If you pay off early, you may be entitled to a refund of part of the finance charge.
See the contract terms of this document for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.         "e" means an estimate.

**SEE BACK FOR INSURANCE CANCELLATION PROVISION**

Insurance: Credit life and credit disability insurance are not required to obtain credit, and will not be provided unless you agree to pay the additional cost. You understand that we anticipate profits from the sale of credit insurance and if you select such insurance you consent thereto. The cost for this insurance for the term of the contract is:

|  | Premium | Signature |
|---|---|---|
| Single Decreasing Credit life | $ | I (Buyer) want single decreasing credit life insurance. <br> Buyer #1 |
| Joint Decreasing Credit Life | $ | We (Buyers) want joint decreasing credit life insurance. <br> Buyer #1 <br> Buyer #2 |
| Single Decreasing Credit Life and Disability | $ | I (Buyer) want single decreasing credit life and disability insurance. <br> Buyer #1 |
| Joint Decreasing Credit Life and Single Disability | $ | We (Buyers) want joint decreasing credit life and single disability insurance on Buyer #1. <br> Buyer #1 <br> Buyer #2 |

**ITEMIZATION OF AMOUNT FINANCED**

1. CASH PRICE (including any sales tax)   $4690.00
2. DOWN PAYMENT
   A. CASH DOWN PAYMENT   $ NONE
   B. TRADE-IN   $ NONE
      (describe)
   C. TOTAL DOWN PAYMENT   $ NONE
3. UNPAID BALANCE OF CASH PRICE (1 minus 2)   $4690.00
4. AMOUNTS PAID TO OTHERS ON YOUR BEHALF
   A. TO INSURANCE COMPANIES
      1. For Credit Life Insurance   $ ___
      2. For Disability Insurance   $ ___
      3. Other   $ ___
   B. TO PUBLIC OFFICIALS   $ ___
   C. TAXES   $ ___
   D. 1. TO ___
      For Title Ins./Abstract   $ ___
      2. TO ___
      For Title Opinion   $ ___
      3. Other   $ ___
   TOTAL PAID TO OTHERS ON YOUR BEHALF   $ NONE
5. Amount Financed (3 plus 4)   $4690.00

*Creditor may retain a portion of these amounts.

If you purchase credit insurance, coverage begins immediately; any premiums earned prior to payment in full are not refunded and will increase the Same As Cash price by the amount of the premiums.

1. ____ SAME AS CASH - PAYMENTS REQUIRED. If checked, you may pay the Unpaid Balance of Cash Price (Item 3 above) in full within ____ months from its date, with no Finance Charges if you pay all scheduled payments in full and on time plus any remaining balance of the Amount Financed remaining after deducting all scheduled payments made. If you do not pay the Amount Financed in full in this period or fail to make any scheduled payment in full and on time, Finance Charges are computed from date of this Contract and payments are required as shown above.

2. ____ SAME AS CASH - DEFERRED PAYMENTS. If checked, you may pay this Contract in full within ____ months from its date, with no Finance Charges, and no payments are due for this period. If you do not pay in full in this period, Finance Charges are computed from date of this Contract and payments are required as shown above.

3. ____ DEFERRED PAYMENTS - NOT SAME AS CASH. If checked, no payments are due until the first payment due date shown above, but Finance Charges are computed from date of this Contract and will be charged upon prepayment in full at any time.

PROMISE TO PAY. Instead of paying the cash price, you purchase goods and services as provided in this Contract and will pay Creditor the Total of Payments shown above. Finance Charges begin on date work is completed and payments begin one month thereafter. You may pay more at any time. If any amount due remains unpaid 15 days after the final due date, you will pay finance charges assessed at the Annual Percentage Rate shown above from the final due date until all amounts due are paid in full. Each person signing as Buyer is personally liable for the entire amount due.

CREDIT INFORMATION/MARKETING. (a) Creditor may investigate your creditworthiness (including obtaining credit reports and verifying employment information). Creditor may share with its affiliates any information regarding you or your application, acceptance, or credit experience with Creditor. However, you may request that this information not be shared with affiliates by notifying Creditor by mail or phone at the location shown above or on your billing statement. (b) From time to time you may receive loan by mail offer from American General Financial Services of Illinois, Inc., if it purchases this Contract. If this offer is in the form of a check, you may destroy it if you wish. If you do not wish to receive such offers, part (b) of this paragraph should be stricken.

BY SIGNING BELOW, YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS IN THIS DOCUMENT

**APPLICABLE LAW.** This Contract is made under the Illinois Retail Installment Sales Act. Creditor may sell it to anyone it chooses, and assignee will have the same rights as Contractor. It is expected that this Contract will be sold to American General Financial Services of Illinois, Inc., or its affiliate.

**PREPAYMENT.** If you fully prepay before the final due date, the total amount you owe will be reduced by unearned Finance Charges, computed by (a) the Rule of 78ths method if the term of this sale is 61 months or less (after first deducting $25 fee), or (b) the Actuarial method for longer terms. No refund of less than $1 (or $5 by check) will be made.

**SECURITY INTEREST.** Unless this sale is secured by a Mortgage on your real estate, Creditor waives any security interest in your home if the goods are installed, and any materialmen's or mechanic's liens. As allowed by law, Creditor's security interest secures any future advances made by Creditor, including advances for taxes, license, insurance, repairs to or maintenance of the security and expenses relating to default.

**DEFAULT.** If you: (a) are in default for 30 days or more, (b) sell, transfer, encumber, abandon, destroy or remove the goods to another state without Creditor's consent (c) fail to comply with the terms of this Contract or any other agreement signed by you as part of this Contract, (d) make any materially false statement to obtain this Contract, (e) file or have filed against you any bankruptcy proceeding, or (f) if all Buyers die, Creditor may declare all you owe immediately payable, less the same refund of unearned Finance Charges you would receive if you prepaid in full. If required by law, Creditor will give you notice of your opportunity to cure default. Creditor has all of the rights, duties and remedies of a secured party under the Uniform Commercial Code including the right to take immediate possession of the property securing the Contract, with or without process, by peaceful entry upon the premises where the property is located. If you are in default, as allowed by law, you will pay (a) court costs, (b) reasonable attorney fees, if the Contract is referred for collection to any attorney (not Creditor's salaried employee) and (c) costs to realize on the security interest.

**DEFERMENT CHARGE.** Instead of a late charge, Creditor may defer the due dates of all remaining payments one or more full months and you will pay the deferment charge allowed by Sec. 405/20 of the Illinois Retail Installment Sales Act.

**DISHONORED CHECK CHARGE.** You will pay $25 if any check or similar instrument given to you is dishonored because of insufficient funds or because no such account exists.

---

**CREDIT INSURANCE CANCELLATION**

You may cancel your credit insurance coverage within 30 days from the date you receive the insurance certificate, and receive a full premium refund. You may also cancel your coverage after this 30-day period and receive a refund of the unearned premium. To cancel your coverage, submit a signed and dated written request to cancel, along with the insurance certificate/policy you received (if available), to the office servicing this sale. All buyers must sign the cancellation request. At the Creditor's option, refunds may be applied to your balance due or given to you.

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**ASSIGNMENT OF CONTRACTOR**

FOR VALUE RECEIVED, Contractor sells, assigns and transfers to American General Financial Services of Illinois, Inc., ASSIGNEE, all of its right, title and interest in and to the within Contract and the goods described therein. To induce Assignee to purchase the Contract, Contractor represents and warrants to Assignee: (1) the Contract is valid and genuine and correctly states the terms of the retail installment transaction between Contractor and Buyer; (2) Buyers have signed or will sign a Completion Certificate and agree that the work has been completed to their satisfaction; (3) the down payment was paid in full, in cash or in trade, and no part was loaned to Buyer by Contractor or was obtained by extension of credit to Buyer; (4) Contractor had the right to sell said goods to Buyer and they are free of all liens, claims and encumbrances; (5) no notice of any defense or right of action has been received by Contractor from Buyer, nor has Contractor any knowledge of any fact that would impair the validity of the Contract; (6) Contractor has the right to sell and assign this Contract to Assignee; (7) all Buyers have legal capacity to Contract; (8) on the date of the Contract, Contractor executed and delivered to each Buyer a completed copy of the Contract and to each Co-Signer a true copy of the Notice to Co-Signer; (9) Contractor has complied with all other requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Trade Commission Credit Practices Rule and the applicable Retail Installment Sales Act; (10) Contractor complied with all local, state and federal laws related to home improvements, and (11) if the retail transaction or negotiations related to the retail transaction were conducted in a language other than English, Contractor gave each consumer, prior to entering into the Contract or any written agreement, an unexecuted copy of the Contract or other written agreement in such foreign language. If any of the foregoing representations or warranties is breached, Contractor agrees to repurchase the Contract for the unpaid balance of the Contract then due from Buyer together with reasonable attorneys' fees, costs and expenses incurred by Assignee. Contractor further agrees that in the event any claim or defense is asserted by the Buyer against Assignee, Contractor shall, on demand, repurchase the within Contract for cash at a price equal to the balance remaining unpaid on said Contract, and Contractor shall indemnify and hold Assignee harmless from any and all liability that may result at any time from any claim asserted by Buyer to recover amounts paid due to any promise, representation or warranty made by Contractor or the Manufacturer to Buyer. Contractor hereby authorizes irrevocably any attorney of any Court of Record to appear for Contractor in such Court in term time or in vacation, at any time hereafter, and to waive the issuance and service of process.

If checked _____ , Contractor further guarantees payment of the full amount due under this Contract if Buyer defaults in making a required payment or the occurrence of any other event of default, or if the Contract is cancelled for any reason.

Acceptance and Assignment: By signing on the front of this Contract, the foregoing Contract is hereby accepted by the Contractor and is assigned to AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC. in accordance with the terms of the assignment above and with the terms of any written Dealer Contract Contractor has entered into with AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.

HOME IMPROVEMENT SALES FORM 013-00004 ILLINOIS (REV. 12-05)

CA: Loans made pursuant to a California Department of Corporations Finance Lenders License. Married persons may apply for an account in their own name. PA: Loans made by Springleaf Financial Services of Pennsylvania, Inc., which is licensed by the Pennsylvania Department of Banking. VA: Licensed by the Virginia State Corporation Commission. WV: Loans in West Virginia are originated and serviced by Springleaf Home Equity, Inc.

All loans are subject to our normal credit policies. See branch for licensing and disclosure information.





Your account is now paid in full.
Please keep the enclosed documents for your records.

## ⌀ Springleaf
Lending made personal



SpringleafFinancial.com

072-80030FS (REV 7-12)

# WE APPRECIATE YOUR BUSINESS.


Springleaf
Lending made personal

Maria H. Harnisch Sr. Customer Account Specialist

**Springleaf Financial Services**
11844 South Western
Chicago, IL 60643-4734
**90+** T 773.445.2800  F 773.445.7940
YEARS IN BUSINESS   W SpringleafFina⁻

**Please keep my card and feel free to offer my services to a family member, friend or associate.**

As a valued Springleaf Financial Services customer, you'll always get prompt and considerate attention from us.

Whenever you would like additional money, we'll go the extra mile to get you what you need.

All loans subject to our normal credit policies.
See back for important information and disclaimers.